EDWARD H. MURPHY

*v.*

DAVID COATES et al.

Two mortgages were given, one in 1854 and the other in 1855, and duly recorded, to H., who died in 1874, and gave them to his daughter M. In 1879, M. asked of the mortgagor, who then owned the mortgaged premises, an acknowledgment that the mortgages, on which nothing had ever been paid, were still valid securities, to which the mortgagor agreed, and, in the presence of a witness, signed such an acknowledgment, endorsed on each mortgage. Afterwards the mortgages were assigned by M. to the complainant, who sent them to the mortgagor to obtain his admission as to the genuineness of his signature (his mark), and the mortgagor thus obtained possession of them, and ever after professed to be unable to find or produce them.—*Held*, that the acknowledgment destroyed the presumption of payment from lapse of time as to the mortgagor, and that, as a second mortgagee, such mortgagee had

Murphy v. Coates.

such constructive notice from the record, where the mortgage was uncanceled, as to put him on inquiry, and that the proof in the case showed, outside of the acknowledgment, that the mortgages had never been paid.

Bill to foreclose.   On final hearing on pleadings and proofs.

*Mr. James Buchanan,* for complainant.

*Mr. James Buchanan,* for answering defendants.

THE CHANCELLOR.

The bill is filed to foreclose two mortgages on land in Trenton, given by David Coates to Louis Hargous, one, April 6th, 1854, for $200, payable in one year, with interest, and the other, January 15th, 1855, for $278, also payable in one year, with interest. Each mortgage was duly recorded in the month in which it was given.  Hargous died in March, 1874.   He held the mortgages at his death.   By his will he gave the residue of his estate, of which residue the mortgages formed part, to Maria M. Hargous, who thus became the owner of the mortgages.  She was one of the executors.  In March, 1879, she, being desirous of obtaining from Coates, who still owned the mortgaged premises, as he does yet, an acknowledgment that the mortgages (on which nothing has ever been paid) were still unpaid and were valid securities, obtained Coates's signature (which he appears to have given readily) to an endorsement on each of the mortgages and each of the bonds which they were respectively made to secure; that no part of the principal or interest had been paid from the date of the instruments, and that the whole of the principal and the interest from the date of the instrument was due and unpaid. Peter Hargous, the nephew of Maria M. Hargous, obtained Coates's signature to the endorsements.   He called on Coates with the bonds and mortgages for the purpose, and took James Cunningham with him.   The latter swears that Hargous told Coates that he had the papers, and asked him if he was willing to sign them, and Hargous asked Cunningham to read them, which he

o

did twice, and Hargous then asked Coates if they were satisfactory, and Coates said Yes, he owed the money and was willing to do everything that was right; that Hargous asked Coates to sign the papers, and Coates said he would not, for he could not write, but asked Cunningham to write his name for him, and said that if Cunningham would do so, he would make his mark; that Cunningham wrote Coates's name, and Coates took the pen and made his mark, and that this was done on all the papers. Peter Hargous swears that he told Coates that he had come to get him to sign, and told him his reason for wanting him to sign, viz., to save his aunt from any loss, and says he added that he knew Coates would do what was right after the endorsements were read to him. He further says that after the endorsements were read to Coates, the latter signed them, and that there were four papers. On the 11th of June, 1879, Maria M. Hargous assigned the bonds and mortgages to Edward H. Murphy, the complainant. On the 4th of August following, Murphy sent Peter Bakes with them to Coates to get the acknowledgment of his signature (his mark) on the endorsements. Bakes went to Coates's house and showed him the papers, and Coates said he knew nothing about them. Bakes asked him about his mark, and he replied that he did not know anything about that. Coates told Bakes to come again the next day. Bakes asked him if he was ready to make the acknowledgment, and Coates asked him to let him see the papers, and Bakes handed them to him, and Coates kept them and refused to return them. He has ever since professed to be unable to produce them. It is not improbable that he has destroyed them. In February, 1876 (before he signed the acknowledgments), Coates executed another mortgage on the same property to the defendant Frederick Walter, for $276, and interest.

Both Coates and Walter contend that no suit for foreclosure can be maintained on the complainant's mortgages, because, as they insist, they are, from lapse of time, presumed to have been paid. But the presumption of payment which arises in regard to mortgages from lapse of time, without payment of interest or demand made, is only a presumption, and it is one which may be rebutted.

*Wanmaker's Exrs.* v. *Van Buskirk, Saxt. 685 ; Barned* v. *Barned, 6 C. E. Gr. 245.* In this case, as to Coates, he has acknowledged, both verbally and in writing, that neither principal nor interest has been paid. And as to Walter, the second mortgagee, he had notice (constructive notice, at least, from the records) of the existence of the complainant's mortgages, and inquiry would have led him to the knowledge that they were wholly unpaid. The records showed the mortgages, and as far as the records went, that they were not satisfied, for they were not canceled of record. Coates, in his testimony in this cause, swears that nothing was ever paid on account of either principal or interest. Hargous, the mortgagee, appears to have been his employer, and to have been very indulgent to him.

Again, it may be remarked, that Walter's mortgage was given, not to secure a loan, but to secure a precedent debt, which, he says, had run for a good while, it might have been for years ; and though he says it includes a sum of money (he says he thinks about $60), which he alleges he lent to Coates, that money was lent some weeks before the mortgage was given, and does not appear to have been lent on the security of the mortgage.

The complainant is entitled to a decree for foreclosure and sale, and his mortgages are entitled to priority over the mortgage to Walter.